# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| HALEY C. REYNOLDS, | : | |
| Plaintiff, | : | |
| vs. | : | CA 15-0422-C |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the August 18, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

Plaintiff alleges disability due to degenerative disc disease of the lumbar spine, agoraphobia and anxiety, and chronic obstructive pulmonary disease. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2010.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of April 1, 2010 through her date last insured of September 30, 2010 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the lumbar spine, agoraphobia and anxiety, and chronic obstructive pulmonary disease (COPD) (20 CFR § 404.1520(c)).
>
> . . .
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b). The claimant can lift and carry 20 pounds occasionally and 10 pound[s] frequently. The claimant would need to alternate sitting/standing about every 30 minutes to one hour but would not need to leave the workstation. The claimant can occasionally use foot controls, climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, and scaffolds. The claimant can never work at or around unprotected heights and dangerous equipment, temperature extremes, humidity, wetness, and exposure to concentrated environmental pollutants such as dust, chemicals and fumes. The claimant is able to understand [and] to carry out simple one or two step instructions and detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations, and avoid tasks involving a variety of instructions or tasks. The claimant cannot work in crowds or with the public. The claimant can have occasional interaction with coworkers.

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

. . .

In terms of the claimant's alleged physical impairments, the claimant has received generally conservative treatment for her physical health and the objective evidence shows generally normal findings. In 2010, the claimant presented multiple times for issues regarding a chronic cough. A chest X-ray from May 2010 showed normal findings. Moreover, the claimant's lungs were noted to be clear. In addition, a pulmonary function test and bronchoscopy showed no abnormal findings. She was prescribed Ultram for her pain symptoms. The claimant presented in September 2010 for a chronic cough.

In January 2013, the claimant presented twice to Providence Hospital, once for pain and fatigue and another time for gastrointestinal pain. Despite gastrointestinal pain, a small bowel biopsy showed normal findings. A chest X-ray showed negative findings, and she had a normal EKG. When presenting for general weakness, she had wheezing in her lungs, but had generally normal examination findings. She was assessed with acute muscle weakness and discharged.

The claimant's medical records from 2012 and 2013 show that the claimant presented for weakness and alleged delirium. She was assessed with chronic lower back pain, and delirium linked to possible drug interaction issues. Nevertheless, physical examination findings were generally within normal limits.

Her treatment records from Alabama Orthopaedic Clinic, PC in 2013 show that the claimant presented for lower back pain. The notes from a 2013 visit note that a MRI lumbar view from June 2011 showed arthritic changes at the L5-S1 area. Upon examination, there was tenderness present in her lumbosacral spine and she had a positive straight leg [raise] test. Nevertheless, she had no tenderness, swelling or deformities in her lower extremities and had a full range of motion. She had generally normal findings in her cervical and thoracic spine. In addition, she generally had a normal gait and station at her treatment visit in June 2013. She was assessed with degenerative disc disease of the lumbar spine.

In terms of the claimant's mental impairments, the claimant has received little consistent, ongoing, or aggressive treatment for her mental impairments. Moreover, recent evidence from June and November 2013 shows that the claimant's symptoms have subsided. In 2007 to 2008, prior

to the amended alleged onset date, the claimant received treatment from N. Faye Pierce, Ph.D. The claimant was assessed with agoraphobia notably in connection with her divorce in 2007. The claimant presented with additional symptoms in May 2007, and her prescription for Adderall was increased for panic attacks and she was prescribed Wellbutrin to aid in her endeavor to quit smoking.

The claimant's treatment records from Alabama Psychiatric Services from 2012 showed that the claimant reported symptoms of exhaustion, anxiety, and agoraphobia. She was prescribed Cymbalta for her reported anxiety attacks that occurred 1-2 times per week. She was assessed with generalized anxiety disorder, and a global assessment of functioning (GAF) score of 50, which indicates serious symptoms. Treatment records from Infection Limited show that she was assessed with anxiety/depression with her predominate component being anxiety. Nevertheless, her medical records from Alabama Orthopaedic Clinic in 2013 show that the claimant denied feeling anxious or depressed. In addition, upon examination, her mood was normal, affect appropriate, and she was oriented and alert.

After considering the evidence of record, the undersigned finds that the above residual functional capacity accommodates the claimant's severe physical and mental health impairments. Specifically, the claimant's degenerative disc disease of the lumbar spine is accommodated by the above limitation to less than a full range of light work and the additional postural limitations. The claimant's COPD is accommodated by the limitation precluding her from working around temperature extremes, humidity, wetness, and exposure to concentrated environmental pollutants such as dust, chemicals and fumes. The claimant's agoraphobia and anxiety, and any arising symptoms, are accommodated by the above concentration and social limitations.

As for the opinion evidence, the opinion of Joanna Koulianos, Ph.D. from October 2012[,] finding that there was insufficient evidence to find any mental limitations[,] is given no weight in light of newer evidence received at the hearing level, the claimant's complaints, and the overall evidence of record indicating mental health issues and treatment thereof.

The opinion of Dr. Koulianos from September 2012 is given some weight in that it is generally consistent with the claimant's testified mental health complaints, activities of daily living, and medical record evidencing mental health issues and treatment thereof, but[] for the opinion setting forth that the claimant could not complete a normal workweek or handle any changes in a work setting, which is inconsistent with the claimant's treatment records, ability to have friends, ability to perform activities of daily living, and treatment noted wherein the claimant denied having any anxiety or depression symptoms.

4

The opinion of Patrick Nolan, M.D. is given little weight because it is not consistent with the claimant's non-aggressive and inconsistent mental health treatment, the lack of any hospitalization for the claimant's mental health, and in light of her activities of daily living.

The opinion of Keith Varden, M.D., that the claimant has "no major medical disability that would render her permanently disabled", while typically one reserved to the Commissioner, is given great weight because it is consistent with the claimant's overall medical evidence of record, the objective evidence with generally normal findings, the lack of aggressive or consistent health care, and the lack of frequent hospitalizations.

The GAF score is given little weight because it is not consistent with the claimant's overall medical record subsequent to the alleged amended onset date, particularly in light of the claimant's own reported denial of anxiety and depression. Moreover, GAF scores are but one tool used by clinicians to develop the clinical picture and cannot be used in isolation from the rest of the evidence to make a disability determination because they are mere snap shots in time, rather than a longitudinal view of the claimant's mental health. As a result, the undersigned gives the GAF opinion no weight.

. . .

In sum, the above residual functional capacity assessment is supported by the lack of consistent and on-going aggressive treatment for her mental and physical impairments, the objective evidence showing generally normal findings in regards to her COPD, the lack of severe abnormal findings in regards to her degenerative disc disease of the lumbar spins, and in light of the claimant's inconsistent mental health treatment and reported symptoms.

**6.     Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).**

. . .

**7.     The claimant was born on August 18, 1962 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled,"**

whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

**10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).**

. . .

Through the date last insured, if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 and Rule 202.14. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational based, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as: bench assembler (DOT 706.684-042) which is light unskilled work with approximately 370,000 jobs in the national economy; garment folder (DOT 789.687-066) which is light unskilled work with approximately 421,000 jobs in the national economy; and surveillance systems monitor (DOT 379.367-010) which is sedentary unskilled work with approximately 82,000 jobs in the national economy.

Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The sit/stand option is consistent with the jobs provided by the vocational expert in light of the expert's experience in the field of vocational rehabilitation/placing people in job[s] and training/education/knowledge of these jobs, in accordance with SSR 00-4p.

Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

**11. The claimant was not under a disability, as defined in the Social Security Act, at any time from April 1, 2010, the amended alleged onset date, through September 30, 2010, the date last insured (20 CFR 404.1520(g)).**

(Tr. 22, 23, 25, 26-27, 29 & 30 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that, before the date last insured, she could perform those light and sedentary jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Reynolds asserts three reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1)

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

the ALJ erred in failing to assign controlling weight to the opinion of the treating physician, Dr. Patrick Nolan; (2) the ALJ erred in failing to seek clarification from Dr. Nolan after finding that the treating physician's opinion was inadequate to assign controlling weight; and (3) the ALJ erred (under SSR 83-20 and HALLEX I-2-6-70(A)) in failing to call on the services of a medical expert to determine the onset date of her disability. Because the undersigned finds that the ALJ erred to reversal with respect to plaintiff's first assignment of error, the Court only tangentially discusses the other assignments of error. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

On September 10, 2012, Dr. Nolan completed a Clinical Assessment of Pain ("CAP") form and thereon indicated that he had treated plaintiff for 5 months and that the condition causing Reynolds' pain, confirmed by June 16, 2011 MRI, was severe facet arthrosis at L5-S1, with degenerative disc disease and compromise of the left L5-S1 disc. (Tr. 346; *see also id.* at 348 ("The patient has major depression as a consequence of the chronic pain. The patient also has generalize[d] anxiety disorder, anticipatory anxiety, possibly posttraumatic stress disorder and agoraphobia. These are beyond my expertise, but the patient sees Dr. John Cantwell a psychiatrist in Daphne, Alabama. The patient states she wakes up in pain to the point of nausea. She has skin hypersensitivity, states that it hurts to even be touched, suggestive of severe fibromyalgia. The patient complains of arthritic complaints of hands, shoulders, hips, ankle and lower back. Her back pain prevents her from standing or sitting at a desk for any significant length of time or for walking long distances.").) Nolan indicated that plaintiff's pain "[a]lways" distracts her from adequately performing daily activities or work and one to two times a week the pain is intractable and virtually incapacitating (*id.* at 346); physical activity—

9

such as walking, standing, bending, lifting, etc.—greatly increase plaintiff's symptoms so as to cause distraction from or total abandonment of task (*id.*); and she is incapable of performing her past work at a productive level because of her pain (*id.* at 347). Nolan also opined on this form that plaintiff could not engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight-hour workday, forty hours a week, without missing more than 2 days of work per month (*id.*) and offered, in support of this opinion, the following: "In summary, the patient has degenerative disc disease and chronic pain syndrome. This is complicated by major depression and fibromyalgia, this is further compromised by a generalize[d] anxiety disorder, which I would defer to Dr. John Cantwell." (*Id.* at 348) According to Nolan, in the year following his completion of the form, plaintiff would require psychotherapy, pain management, and low impact physical therapy. (*Id.* at 347.) Nolan described the restrictions/limitations on plaintiff's daily activities (Tr. 348 ("The patient cannot sweep, mop, vacuum or clean windows. Any twisting motion is extremely painful. She cannot walk or stand for extended periods of time. Cannot walk to the mailbox and back without pain. She can't make a bed without stopping to rest. She can't do repetitive activities with her hands or fingers without pain and swelling."); *compare id. with* Tr. 347)) and indicated that plaintiff's pain had been at the level indicated on the form since 2009 (*id.*).

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good

cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

In this case, the ALJ apparently accorded little weight to the opinions set forth on the CAP form Dr. Nolan completed. (*See* Tr. 27 (citing Exhibit 14F, which consists of Nolan's CAP form and Clinical Assessment of Fatigue form).)[4]

> The opinion of Patrick Nolan, M.D. is given little weight because it is not consistent with the claimant's non-aggressive and inconsistent mental health treatment, the lack of any hospitalization for the claimant's mental health, and in light of her activities of daily living.

(*Id.*)

The undersigned cannot find any of the reasons offered by the ALJ for rejecting Dr. Nolan's CAP opinions supported by substantial evidence for the simple fact that Dr. Nolan was not basing his CAP opinions on Reynolds' mental impairments; instead, his pain comments have as their primary focus plaintiff's severe facet arthrosis at L5-S1,

---

[4] While the ALJ references the forms Dr. Nolan completed, the undersigned is troubled by her failure to delineate the pertinent pain opinions set forth by the treating physician, particularly since the reasons relied upon by the ALJ for rejecting the CAP opinions bear no relationship to those opinions.

11

with degenerative disc disease and compromise of the left L5-S1 disc. (Tr. 346.) To be sure, Nolan confuses the issue somewhat by commenting that Reynolds' major depression was "caused" by her chronic pain and his mention of other mental impairments (Tr. 348); however, after mentioning numerous mental impairments, he immediately "backtracks" by acknowledging that such impairments are outside his area of expertise[5] and that Dr. John Cantwell, plaintiff's treating psychiatrist in Daphne, would be the proper consulting source with respect to her mental impairments (*id.*). Because Dr. Nolan's CAP opinions are directed to a physical impairment (that is, severe facet arthrosis at L5-S1, with degenerative disc disease and compromise of the left L5-S1 disc), not a mental impairment, the ALJ's "mental" comments offer no reason for the rejection of Dr. Nolan's pain opinions. Moreover, because the ALJ offers no "context" with respect to her conclusory reference to plaintiff's "activities of daily living," this Court is left to question whether this comment is directed to plaintiff's mental "activities" as opposed to her "physical" activities of daily living. (*Compare* Tr. 27 *with* Tr. 23-24 (in the context of discussing whether plaintiff's mental impairments met or medically equaled Listings 12.04 or 12.06, the ALJ specifically determined that "[i]n activities of daily living, the claimant had a mild restriction. During the day, she spends time on her laptop, watches television, and prepare[s] simple meals (Hearing Testimony). *She alleges she is not able to perform household chores regularly due to her physical limitations and pain rather than due to her mental limitations*." (emphasis supplied)).) Accordingly, this Court finds that the reasons set forth by the ALJ for rejecting the treating physician's opinion are illusory, not real. Moreover, those

---

[5] Dr. Nolan is an internist who specializes in infectious diseases. *See* http://www.vitals.com/doctors/Dr_Patrick_E_Nolan.hyml (last visited, August 12, 2016).

12

"reasons" have no basis or support in the record.[6] Because the reasons offered by the ALJ for rejecting Dr. Nolan's CAP opinions are inadequate, this cause is due to be remanded to the Commissioner for further consideration not inconsistent with this opinion.[7]

---

[6] In reaching this conclusion, the Court does not mean to indicate that there are no reasons the ALJ can legitimately point to (on remand) for rejecting Dr. Nolan's CAP opinions. However, this Court decidedly cannot weigh the evidence anew and "come up" with valid reasons for the ALJ's rejection of Dr. Nolan's CAP opinions, *see Wilcox v. Commissioner, Social Security Administration,* 442 Fed.Appx. 438, 440 (11th Cir. Sept. 21, 2011) ("As our limited review precludes us from reweighing the evidence [or deciding the facts anew], we will find no reversible error when the ALJ has articulated specific reasons for failing to give the opinion of a treating physician controlling weight, *if* those reasons are supported by substantial evidence." (emphasis supplied)), as the Commissioner appears to suggest (*see* Doc. 13, at 8 ("First, although not dispositive, the Commissioner notes that Dr. Nolan was not treating Plaintiff at the time of her DLI, as Plaintiff herself acknowledges []. Second, Dr. Nolan's opinions are conclusory without any support whatsoever.")). Moreover, while there can be little question but that Dr. Nolan did not treat plaintiff prior to her date last insured, any suggestion by the government during oral argument that the ALJ made mention of this fact in her decision denying benefits is incorrect. (*See* Tr. 20-30.) And the ALJ certainly did not rely on this "fact" in rejecting the treating physician's "opinion." (*See* Tr. 27.) Indeed, it appears likely that the ALJ would not have relied upon this reason to reject Nolan's "opinion" given her clear findings that plaintiff's degenerative disc disease was a severe impairment prior to the date last insured (Tr. 22), which, while not of listing severity (Tr. 23), would require plaintiff "**to alternate sitting/standing about every 30 minutes to one hour but would not need to leave the workstation[,]**" etc. (Tr. 25). Because the ALJ clearly found that, prior to the date last insured, plaintiff had severe degenerative disc disease causing numerous postural limitations, this Court finds that it is simply not too much to ask that the ALJ address "head on" Dr. Nolan's opinion that plaintiff has experienced back pain (caused by severe facet arthrosis at L5-S1 with degenerative disc disease and compromise of the left L5-S1 disc) since 2009 so severe that it distracts her from adequate performance of daily activities or work, one to two times a week the pain would be intractable and virtually incapacitating, and that physical activity would greatly increase the pain and cause distraction from task or total abandonment of task (Tr. 346).

[7] On remand, the ALJ can certainly seek clarification from Dr. Nolan in any way she sees fit, although she is not required to seek such clarification, *see* 20 C.F.R. § 404.1520b(c)(1) (2016) ("We *may* recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence." (emphasis supplied)), and can also retain the services of a medical expert (if necessary) to determine Reynolds' onset of disability, particularly in light of Dr. Nolan's "dating" of plaintiff's pain, associated with degenerative disc disease, to 2009.

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 112 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 24th day of August, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**